# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Criminal No. 07-388 (PAM/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Houa Vang (02),** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for a hearing before the undersigned Magistrate Judge of the District Court on December 13, 2007, on the pretrial motions of defendant Houa Vang. Frederick J. Goetz, Esq., appeared on behalf of Mr. Vang (Vang). David Genrich, Assistant United States Attorney, appeared on behalf of the Government.

The Court ruled on the nondispositive motions in a separate order, dated December 17, 2007 (Doc. #97). Vang also moved to suppress evidence seized from his residence as a result of a search warrant signed on October 26, 2007. (Ex. # 10 and Doc. #82) Each party submitted briefs to address the issues. In essence, Vang challenges the search warrant for lack of probable cause. The motion is referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1.

## I.   BACKGROUND

This matter arises from an investigation of Vang's alleged involvement with at least one other person, co-defendant Le Guo Wu (Wu), in a conspiracy to commit marriage fraud and engage in alien smuggling by using sham marriages for Chinese

1

nationals to gain entry into and fraudulently obtain immigration benefits from the United States.  As part of the investigation, agents received information from at least two individuals, purportedly describing the scheme, and how Wu and Vang accomplished the fraud.  Here, Vang disputes a search warrant signed on October 26, 2007 in the District of Minnesota, and executed on his St. Paul residence soon thereafter.  After a four-corners review of the affidavit, the court recommends that the motion to suppress evidence be denied, because the warrant contains sufficient probable cause to establish a fair probability that contraband or evidence of a crime would be found in the location to be searched.  In the alternative, the court recommends that the motion be denied, because the officers executed the warrant in good faith.

## II.     THE FACTS

The warrant indicates that a confidential reliable informant (CRI) and cooperating witness (CW) revealed information to ICE agents outlining a marriage fraud scheme run by Wu and Vang.[1]  Specifically, on May 12, 2006, a CRI recruited by Wu to participate in the illegal scheme gave information to the investigators.  Wu offered the CRI $13,000 to marry a Chinese national, who would then enter the United States and use the sham marriage to obtain immigration benefits or Permanent Residency status.  To facilitate the scheme, the CRI was offered a free trip to China to document the sham marriage.

The affidavit states that the CRI's information was "verified through investigative means, including through consensually-monitored communication, checks of ICE indices, and review of immigration documents submitted to perpetrate the fraudulent scheme".  Agents also reviewed "Wu's telephone records, filings connected to names

---

[1] The following facts will be stated as they are found in the search warrant affidavits.  Obviously, these are alleged facts, but for purposes of this analysis, the court will recite the facts as relayed in the affidavit.

2

provided by the CRI, airline flight manifests…and other resources" and that review substantiated a pattern of fraud consistent with the information provided by the CRI.

Approximately 10 months later, the CW was stopped upon his/her return to the United States from a trip to China. The CW admitted that Wu recruited him/her into a fraudulent marriage scheme. The CW confessed that the purpose of the scheme was to allow Chinese nationals to enter the United States to fraudulently obtain immigration benefits. The CW met Wu in Philadelphia to coordinate the trip to China. Wu helped the CW obtain a passport and other documents for the trip to China and the sham marriage. Wu also paid the CW a portion of the money promised to CW by Wu. The CW said that others participating in the marriage fraud also met with Wu in Philadelphia.

The affidavits indicate that not only was the CW's information consistent the information provided by the CRI, but the CW's information was "verified through ICE investigative techniques, including but not limited to, consensually-monitored communications, review of ICE indices, and review of relevant immigration and alien files."

Both the CRI and CW identified Vang as a co-conspirator with Wu in recruiting and referring U.S. citizens to act as participants in the marriage fraud scheme. The CW indicated that Vang recruited CW into the scheme and received a payment for doing so. Both the CW and CRI continued to cooperate in the investigation by engaging in consensually monitored phone calls with Vang and Wu.

In June of 2007, the CW recorded a conversation with Wu, in which Wu admitted that he paid Vang $3,000 for recruiting the CW. Wu discussed recruiting others and indicated that Wu pays Vang $500.00 a month to assist in the fraudulent scheme.

Then, in September of 2007, the CRI recorded a conversation with Vang. During that conversation, Vang confirmed that Wu paid him to recruit others if the Chinese national passed his consulate review. He described the recruitment process as well and indicated there are others who help recruit participants for the scheme.

The CW and surveillance of Vang, confirmed that he lives at the address listed on the warrant. On one occasion, investigators observe Vang return to the residence after engaging in an immigration interview with a Chinese national. This was the type of interview necessary for an alien to obtain the residency status and/or benefits described as a part of the scheme by the CRI and CW. Finally, the affidavit contains a paragraph advising that based upon the agent's training and experience, records and other evidence of the fraud would be kept at the perpetrator's residence.

### III.   THE LAW

The Fourth Amendment requires that for a search warrant to be authorized, a detached and neutral magistrate must find that it is supported by probable cause. *Johnson v. United States*, 333 U.S. 10, 14 (1948); *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967). A search warrant is supported by probable cause when a reasonable person, considering the all facts and circumstances alleged in the supporting affidavit, would find a fair probability that incriminating evidence is on the premises to be searched. *Illinois v Gates*, 462 U.S. 213, 238 (1983); *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002). There must be a "nexus…between the item to be seized and criminal behavior." *Hayden*, 387 U.S. at 307. There must also be a nexus between the contraband and the place to be searched, which may be reasonably inferred given all the circumstances. *United States v. Tellez,* 217 F.3d 547 (8th Cir. 2000). An agent's training and experience

may be considered in determining probable cause, but it cannot be the only evidence of the proper showing of nexus. *See Texas v. Brown*, 460 U.S. 730 (1983).

When reviewing the sufficiency of the affidavit, a court may only consider the information stated in the affidavit. *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003). Given the wide variety of circumstances that can lead to a finding of probable cause for a search warrant, great deference is accorded to a reviewing judge's determination. *United States v. Leon,* 468 U.S. 897 (1984); *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007), *quoting Gates*, 492 U.S. at 236. The reviewing court is to simply ensure that the issuing judge had a "substantial basis" for finding probable cause. *Gates,* 462 U.S. at 239. Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell,* 436 F.3d 894 (8th Cir. 2006).

### IV. DISCUSSION

The only real dispute regarding this warrant, is whether there is a sufficient nexus between the residence and the items sought. Defendant challenges the warrant, claiming, there are no facts that tie the house to Vang's participation in the illegal scheme. Neither the CW nor CRI indicate that he recruited them from his home or was at his home to receive payment from Wu, as discussed in the phone calls. The government disagrees and urges the court to take all the circumstances in consideration.

In considering all the circumstances, the Court finds a sufficient nexus to establish probable cause. Arguably, if this affidavit merely described the scheme as outlined by the CW and CRI without more, a nexus would be hard to find. But here, phone calls were made to flesh out the scheme and determine the role each defendant played. It is clear from those calls that Vang is acting like an employee of Wu. Moreover, Vang is

active in the scheme, recruiting others and being paid monthly. Most importantly, there is evidence that just after participating in an immigration interview consistent the admitted purpose of the scheme, he returned to his house and drove the other person to a separate house, supporting the notion that it was a sham marriage.

This is not like a drug deal where drugs may be present at a house for particular deals. Nor is there a requirement that the fraud must be committed at the house to find a connection between the potential contraband or evidence of fraud and the house. What is being sought is evidence of fraud, involving money payments, identification documents, immigration documents, and evidence of his connection to his admitted co-conspirator. It may be reasonably inferred as the agent's training and experience suggests, that such records and documents would be kept at his home and that they would still be there given his active participation in the scheme over at least a one-year period. Accordingly, the court recommends that the search warrant be upheld.

However, even if there is an insufficient nexus between the items seized and his residence, this is a case perfectly situated for a finding under *United States v. Leon,* 468 U.S. 897 (1984). Under *Leon*, of course, evidence will not be suppressed if it was "objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *Id.* at 922.

Now, if a judge abandons his neutral and detached role or when there is dishonesty in presenting the facts to the judge or, where the warrant is so facially deficient that it is unreasonable to rely on the validity of the warrant, then the good faith

exception will not apply.. *Id.* at 923; *Tellez*, 217 F.3d at 550; *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007).

Here, there is no evidence that any of those rare circumstances apply.  There is nothing to suggest that the issuing judge abandoned her neutral and detached role.  There is also no evidence of dishonesty on the part of the agents.  Finally, this court cannot say that the warrant was so deficient that it was unreasonable for an agent to rely in good faith on the issuing judge's finding of probable cause.  Instead, the nature of the fraudulent scheme, the nature of the items to be seized, Vang's retreat to the house after apparently engaging in the fraudulent scheme and his current and active role in the scheme, all combine to allow the agents to reasonably rely on the judge's finding.

## V.     RECOMMENDATION

Based upon the foregoing and all the files and proceedings therein, IT IS HEREBY RECOMMENDED THAT Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. #82) be DENIED.

Dated this 9th day of January, 2008         s/ *Jeanne J. Graham*
                                            JEANNE J. GRAHAM
                                            United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **January 24, 2008**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.